O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MELINA LOUISE RIEBLING,

        Plaintiff,

    v.

NANCY A. BERRYHILL, Deputy
Commissioner for Operations, Social
Security,[1]

        Defendant.

Case No. 2:17-cv-03855-KES

MEMORANDUM OPINION AND
ORDER

## I.

## BACKGROUND

On January 24, 2014, Melina Louise Riebling ("Plaintiff") filed an

application for disability insurance benefits ("DIB") alleging disability

commencing on January 5, 2011, her last day of work in the collections department

at California State University Northridge ("CSUN"). Administrative Record

("AR") 68, 183-84. On July 10, 2015, an Administrative Law Judge ("ALJ")

---

[1] Effective November 17, 2017, Ms. Berryhill's new title is "Deputy
Commissioner for Operations, performing the duties and functions not reserved to
the Commissioner of Social Security."

1

conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified, as did a medical expert ("ME") and a vocational expert ("VE").  AR 52-102.  On August 27, 2015, the ALJ issued a decision denying Plaintiff's DIB application.  AR 39-46.

The ALJ found that Plaintiff suffered from the severe impairment of degenerative disc disease affecting the lumbar and cervical spine.  AR 39.  Despite this impairment, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of sedentary work.  Specifically, the ALJ found that Plaintiff could lift or carry ten pounds occasionally and less than ten pounds frequently; stand for two hours total in an eight-hour day with the use of a cane for long-distance ambulation; sit for six hours; occasionally climb ramps, stairs, ladders, and scaffolds; occasionally stoop, kneel, crawl, and crouch; frequently balance; not work at unprotected heights or with moving mechanical parts; and not work in conditions of extreme cold or heat.  AR 42, citing 20 C.F.R. §§ 404.1567, 416.967 (defining sedentary work).

Based on this RFC and the VE's testimony, the ALJ determined that Plaintiff could perform her past relevant work as a collection clerk, Dictionary of Occupational Titles ("DOT") code 241.357-010.  AR 45.  The ALJ therefore concluded that Plaintiff was not disabled.  AR 46.

## II.

## STANDARD OF REVIEW

A district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole.  42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir.

2007).  It is more than a scintilla, but less than a preponderance.  <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Comm'r of SSA</u>, 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  <u>Id.</u> at 720-21.

"A decision of the ALJ will not be reversed for errors that are harmless."  <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  Generally, an error is harmless if it either "occurred during a procedure or step the ALJ was not required to perform," or if it "was inconsequential to the ultimate nondisability determination."  <u>Stout v. Comm'r of SSA</u>, 454 F.3d 1050, 1055 (9th Cir. 2006).

**III.**

**ISSUES PRESENTED**

<u>Issue One-A</u>[2]:  Whether the ALJ gave germane reasons for rejecting the opinions of Plaintiff's treating chiropractors, Drs. Griffin and Kantor.  (Dkt. 19, Joint Stipulation ["JS"] at 5-9.)

<u>Issue One-B</u>:  Whether new evidence submitted to the Appeals Council from Plaintiff's treating physician, Dr. Cox, renders the ALJ's decision no longer supported by substantial evidence.  (JS at 4-5, 10-11, 19-20.)

<u>Issue Two</u>:  Whether the ALJ provided clear and convincing reasons to discredit Plaintiff's subjective symptom testimony.  (JS at 4, 20-25, 29.)

---

[2] For ease of discussion and to track the briefing, the Court has split Plaintiff's first issue into two discrete issues labeled One-A and One-B.

## A. **Issue One-A:  Drs. Kantor and Griffin.**

### 1.  **Rules for Evaluating Chiropractic Opinions.**

The Social Security Administration regulations divide medical sources into two categories: "acceptable medical sources" and "other sources." 20 C.F.R. §§ 404.1502, 404.1513.[3]  In general, only licensed physicians and similarly qualified specialists are "acceptable medical sources" who can provide evidence to establish a claimant's impairment.  Id. § 404.1513(a).  Chiropractors are included in the "other sources" category, and can provide evidence to show the severity of a claimant's impairment and how it affects his or her ability to work.  Id. § 404.1513(d).  ALJs may give opinions from other sources "less weight than opinions from acceptable medical sources."  Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996).  "The ALJ may discount testimony from … 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'"  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010)).  One germane reason is sufficient.  Hutton v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 2360, at *18 (E.D. Cal. Jan. 6, 2017).

### 2.  **Summary of Chiropractic Evidence.**

#### a.  Dr. Kantor.

Dr. Kantor treated Plaintiff from 1998 through at least November 22, 2013.  AR 440 (letter stating first treatment date), 410-26, 441-58 (treatment notes from 1998-November 22, 2013).  In August 2012, Dr. Kantor opined that Plaintiff's chronic pain "is due to her scoliosis and degenerative disc disease."  AR 440.  In February 2013, Dr. Kantor provided a declaration in support of Plaintiff's

---

[3] All citations are to the regulations in effect at the time of the ALJ's decision.

opposition to her employer's motion for summary judgment in an Americans with Disabilities Act lawsuit.[4]  AR 82, 459-60.  Dr. Kantor explained that in 2007, he had informed Plaintiff's employer that her disabilities "prevent her from sitting down for long periods of time" and require "regular pool therapy."  AR 460. CSUN had accommodated Plaintiff by permitting her to telecommute three days/week, such that Plaintiff avoided "long commute times" on those days.  AR 459-60.

Dr. Kantor's handwritten treatment notes are difficult to read, but do refer to complaints about Plaintiff's hands.  See, e.g., AR 410 (01/08/14 note: "pt having [?] tightness and tingling into hands …" and 01/24/14 note: "tingling in both hands"), 270 (03/27/13 note: "pt having continued pain in left thumb; saw MD put in splint").  His notes also refer to Plaintiff sitting and using a computer.  See, e.g., AR 271 (02/15/13 note: "last couple days sitting @ computer working on case" and 02/28/13 note: "Pt sitting a lot @ computer working a case" and 03/08/13 note: "pt continue to sit @ computer"), 275 (06/01/12 note: "pt doing a lot of sitting @ computer for depo"), 278 (12/08/11 note: "Pt having a painful week [?] poss due to last 6 depositions"), 280 (08/30/11 note: "Pt continues to experience pain … poss due to continued sitting working on paperwork for depo." and 09/02/11 note: "Pt sitting a lot slowly working on paperwork for depo").  He also refers to travel activities.  See, e.g., AR 278 (01/04/12 note: "Pt back from trip up north"), 272 (12/26/12 note: "Pt back from trip to Fresno").

b. Dr. Griffin.

In July 2014, Dr. Griffin provided a two-page Physician's Report on

---

[4] Concerning the lawsuit, Plaintiff told the ALJ, "I did prevail in that by the way."  AR 82.  Per the Los Angeles County Superior Court's online records, case no. BC 454979 was voluntarily dismissed with prejudice on June 25, 2013 after CSUN moved for summary judgment.  By "prevail," Plaintiff may have meant that her employer agreed that she was disabled.  See id.

Disability. AR 675-76. In that report, he stated that he first treated Plaintiff in February 2014 and her most recent visit was in June 2014. AR 675. Under "Examination Findings," he wrote, inter alia, "neck pain with tingling into hands." Id. Under "Diagnosis," he wrote, "Pt unable to use keyboard due to arthritic changes in hands. … Severe arthritic changes are present bilaterally in hands." Id. He refered to x-rays taken on February 20, 2014. Id. The attached X-Ray Analysis Report, however, refers only to spinal x-rays, not to x-rays of Plaintiff's hands, wrists, or arms. AR 677.

Treatment records from Dr. Griffin show over thirty treatment sessions that cover a period from September 26, 2014, through May 20, 2015, i.e., all after he wrote the Physician's Report on Disability in July 2014. AR 654-66. These handwritten notes are difficult to read, but the Court did not see – and the parties did not cite – any records discussing arthritis affecting Plaintiff's hands or computer usage. Some notes reflect Plaintiff's subjective complaints. See, e.g., AR 657 ("strained neck 2 days ago" and then "neck is a little better"), 661 ("pt stressed and getting HAs [headaches] and ↓[less] sleep"). Others reflect Dr. Griffin's observations. See, e.g., AR 660 ("swell[ing] ankles b/l [bilaterally]"), 667 (recording spinal range of motion by degrees). In notes titled "Physical Examination" from September 26, 2014, Dr. Griffin noted under chief complaint, "LBP [lower back pain] NP [neck pain] B/L [bilateral] hands." AR 667. He also wrote, "® [right] Rib Px [pain] & intermittent rad[iates] to hands." Id.

### 3. The ALJ's Reasons for Discounting the Opinions of Drs. Kantor and Griffin.

The ALJ discussed Dr. Griffin's opinion that Plaintiff is "unable to use keyboard due to arthritic changes in hands. … Severe arthritic changes are present bilaterally in hands. … Pt is also having severe swelling and arthritic in B/L hands making her unable to use keyboard." AR 44, citing AR 675-76. The ALJ discredited Dr. Griffin's opinion because (1) chiropractors are not acceptable

6

medical sources, (2) he did not explain the evidence on which he relied to reach this opinion, and (3) he overly relied on Plaintiff's subjective complaints. AR 44.

The ALJ discussed Dr. Kantor's opinion that Plaintiff "cannot sit for long periods and must take regular breaks to lie down with ice on her low back and elevate her legs." AR 44, citing AR 482 (2009 letter recommending that Plaintiff "not sit for long periods of time and take regular breaks …" but can telecommute some days and work on campus other days from 9:00 a.m. to 6:00 p.m.), 494 (2007 letter recommending that Plaintiff "not sit for long periods of time and take frequent breaks …" and telecommute). Both letters pre-date Plaintiff's January 5, 2011 claimed disability onset date by several years. Dr. Kantor, however, provided a declaration discussing these opinions dated February 21, 2013. AR 459-60.

The ALJ rejected Dr. Kantor's opinion for the same reasons as Dr. Griffin's, and because Dr. Kantor "fail[ed] to specifically state how long the claimant can actually sit at one time and how often she must take breaks …." AR 44. The ALJ found that Plaintiff could sit for six hours during an eight-hour workday and stand or walk for the other two hours. AR 42.

### 4. Analysis of Reasons for Discounting Dr. Griffin's Opinion.

Only an acceptable medical source can provide a medical diagnosis. Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) (medical diagnoses are "beyond the competence of lay witnesses"). Plaintiff has not cited to any acceptable medical source who ever diagnosed her as suffering from arthritis in her hands. The Joint Stipulation does not discuss any objective medical evidence showing that she has arthritis in her hands, such as imaging studies.[5] In July 2014, the same month Dr.

---

[5] At the hearing, Plaintiff testified that in 2006, she was tested for "rheumatoid," a form of arthritis, but the test revealed, "It's your back. It's your neck. You know, you have herniated discs." AR 80. She testified that her initial back injury arose from a surgery that was delayed, causing her to be "strapped down in the weird position for so long," and her injury was exacerbated by

Griffin opined that Plaintiff has arthritis, a treating doctor performed a physical and under "joint exam," he noted, "All normal, no swelling or tenderness, full range of motion." AR 341. To the extent Dr. Griffin's opinion diagnoses Plaintiff as suffering from arthritis or interprets x-rays, the ALJ correctly rejected that diagnosis/interpretation as not coming from an acceptable medical source.

Regarding the lack of support for Dr. Griffin's opinion that Plaintiff is unable to use a keyboard, none of his treatment notes discuss swelling in Plaintiff's hands. His treatment notes do, however, note ankle swelling, suggesting that he would have noted other swelling had he observed it. See AR 660. In the September 2014 "Physical Examination" record that mentions Plaintiff's hands, Dr. Griffin noted her hand pain under the heading "chief complaint," suggesting that he was recording Plaintiff's complaints. AR 667. When he noted pain radiating to her hands, he did so under the heading "Hx," an abbreviation for patient history, which again suggests this information was supplied by Plaintiff. Id. When Dr. Griffin referred to objective findings from x-rays concerning Plaintiff's back, he began his note, "Old x-rays show …." Id. While he cites that 02/20/14 x-ray as evidence supporting his diagnosis of "severe arthritic change" to both hands, the x-ray report only discusses Plaintiff's spine. AR 675, 677. Moreover, per Dr. Kantor's notes, Plaintiff could use a computer in 2012 and 2013. AR 271, 275. In an Exertion Questionnaire dated April 29, 2013, Plaintiff admitted that she could use a computer, and she provided a typed attachment.[6] AR 213. Plaintiff does not cite to any records showing a significant change in her condition, such that she became unable to use a computer by July 2014. Thus, substantial evidence supports the

_____

"congenital issues." AR 77, 81.

[6] Plaintiff stated that she checked her email in the morning and evening, but that using a computer "for more than 20-30 minutes causes radiating pain, numbness, tingling, and loss of sensation in arms, hands, and fingers." AR 213.

ALJ's finding that Dr. Griffin's relevant opinion (i.e., that Plaintiff is "unable to use keyboard" [AR 675]) was based mostly on Plaintiff's subjective complaints and not on his own observations or other objective medical evidence. This was a germane reason to discount his opinion.

### 5. Analysis of Reasons for Discounting Dr. Kantor's Opinion.

Neither Dr. Kantor's 2007 nor 2009 letter opines that Plaintiff cannot work because of her physical impairments. Rather, his letters recommend accommodations to her then-employer that, if implemented, he believed would have enabled her to continue working at CSUN despite her impairments. AR 459-60. Plaintiff testified that she worked in CSUN's collections department through July 2010 pursuant to a telecommuting agreement, and "this worked perfectly." AR 85. In July 2010, however, CSUN began "phasing out" telecommuting agreements and required her to work on campus five days/week, which she found "extremely grueling." Id. She did so until January 2011, at which point she had "collapsed" at home and was "stressed out." AR 85-86. She filed a lawsuit against CSUN alleging that she could have continued to work, but CSUN was unwilling to accommodate her medical conditions. AR 82.

Plaintiff argues that Dr. Kantor's opinion that Plaintiff cannot sit for "prolonged" periods means that Plaintiff "cannot perform sedentary work which requires sitting most of the day." (JS at 9.) There is, however, no inherent inconsistency between being unable to sit for "prolonged" periods and performing sedentary work as described in Plaintiff's RFC. If each eight-hour workday is divided into twelve forty-minute blocks comprised of sitting for thirty minutes and walking or standing for ten minutes, then Plaintiff could sit for six hours each day, but never sit for longer than thirty minutes at one time, i.e., never sit for a "prolonged" period. As Plaintiff described her prior collections work, it involved ample opportunities for standing or walking to break up the time spent sitting. Plaintiff testified that she would walk "to a remote location" to "pick out the paper

files for each student [she] was dealing with." AR 88. She described "a lot of back and forth" walking to pick up files. AR 89. She also did "a lot" of work using phones and computers. Id. Such work can be done standing up. Dr. Kantor did not offer any opinions about how long Plaintiff can stand or walk during a workday.

Dr. Kantor did, however, opinion that Plaintiff would need to take "regular" or "frequent" breaks lying down to ice her back and elevate her legs. AR 482, 494. It is unclear if the breaks proposed by Dr. Kantor could occur during regular rest and meal breaks. Assuming Dr. Kantor meant that Plaintiff could not spend a full eight-hour workday doing some combination of sitting, walking, or standing, but instead needed to spend some unspecified portion of those eight hours lying down, then his opinion would be inconsistent with Plaintiff's RFC. The Court, therefore, will consider whether the ALJ gave germane reasons for rejecting Dr. Kantor's opinion that Plaintiff would need to take "regular" or "frequent" breaks lying down.

Evidence from "other medical" sources such as chiropractors can show the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. § 404.1513(d). Non-acceptable medical sources may not, however, provide opinions concerning the underlying medical cause of functional impairments or how to treat medical conditions. Compare id. and id. § 404.1513(a). An ALJ need not provide any reason other than the lack of medical qualifications to reject medical opinions offered by non-acceptable medical sources. Id. § 404.1527(a)(2) (limiting medical opinions reflecting judgments about the nature and severity of impairments, including symptoms, diagnosis, and prognosis, to those provided by acceptable medical sources). Thus, while Dr. Kantor's status as a chiropractor would not be a germane reason to discount his general observations made during Plaintiff's appointments (such as redness, swelling, etc.), it is a germane reason to discount his medical opinion concerning how Plaintiff should treat her degenerative disc disease, i.e., by lying down with ice packs on a "regular" or "frequent" basis.

The ALJ also provided a germane reason supported by substantial evidence

when he noted that Dr. Kantor's letters do not describe the clinical findings or observations on which he based his opinion.  AR 44, citing AR 482, 494.  While he references Plaintiff's 2006 and 2008 MRIs as establishing that she has degenerative disc disease and scoliosis, these records do not support any particular opinions about how to treat those conditions.  While the administrative record contains many of Dr. Kantor's treating records, Plaintiff has not cited any treatment notes that discuss the subject matter of Dr. Kantor's letters, i.e., opinions or recommendations concerning Plaintiff's need to lie down, use ice packs, or elevate her legs.  See Molina, 674 F.3d at 1111 (holding ALJ properly discounted physician assistant's opinion that lacked supporting reasoning or clinical findings).

**B.  Issue One-B:  New Evidence from Dr. Cox.**

**1.  Rules Governing New Evidence Accepted by the Appeals Council.**

After the ALJ renders a decision denying benefits, the claimant may seek review by the Appeals Council.  20 C.F.R. § 404.970.  The Appeals Council will review the case under circumstances enumerated in the regulations, including where the ALJ's action, findings, or conclusions are not supported by substantial evidence.  Id. § 404.970(a)(3).  If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision.  Id. § 404.970(b).  The Appeals Council shall evaluate the entire record, including the new and material evidence submitted if it relates to the period on or before the date of the ALJ decision.  Id.  It will then review the case if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record—i.e., if the new evidence "tips the scales" against finding that substantial evidence supports the ALJ's action, findings, or conclusion.  Id.

In such cases when the Appeals Council "declines review, 'the ALJ's decision becomes the final decision of the Commissioner,' and the district court reviews that decision for substantial evidence, based on the record as a whole."

Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161-62 (9th Cir. 2012) (citation omitted).  The "record as a whole" includes any new evidence considered by the Appeals Council, and "the district court must consider [that new evidence] when reviewing the Commissioner's final decision for substantial evidence." Id. at 1163.  If the district court determines that the ALJ's decision, as a result of the new evidence, is not supported by substantial evidence, then the court has "discretion to remand [the] case either for additional evidence and findings or to award benefits." Id. at 1164.  The district court may only "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." Id.  If, on the other hand, the district court determines that the ALJ's decision is still supported by substantial evidence, then the district court shall affirm the Commissioner's final decision.  See, e.g., Newcomer v. Berryhill, No. 15-35122, 2018 WL 1443533, at *1 (9th Cir. Mar. 23, 2018) (affirming ALJ's decision as supported by substantial evidence after considering record that included new medical opinion considered by Appeals Council); Coleman v. Astrue, 2012 U.S. Dist. LEXIS 39430, at *27 (S.D. Cal. Feb. 14, 2012) (considering evidence presented to the Appeals Council and concluding "the entire record does not lead to the conclusion that the new Dr. Alleyne report renders the ALJ's conclusion against the weight of the evidence.  The February 1, 2008 letter from Dr. Alleyne is cursory and does not reveal what clinical testing, if any, supports Dr. Alleyne's findings.").

As a threshold matter, Plaintiff argues for a different procedure.  Plaintiff argues, "Remand is appropriate in this case for the ALJ to consider the new and material evidence submitted by the treating physician … Dr. Cox that is currently in the record.  If the ALJ does not find that report detailed enough or finds any inconsistencies, he should re-contact Dr. Cox consistent with the regulations.[7]  Only

---

[7] Plaintiff suggests that before discrediting a medical source for providing opinions that are internally inconsistent or inconsistent with the source's own

12

then should the ALJ send Riebling out for a consultative examination." (JS at 11.) Per the above-cited authorities, however, remand is not required to enable the ALJ to consider Dr. Cox's opinion letter if the Court determines that the ALJ's decision is still supported by substantial evidence.

### 2. Summary of Relevant Administrative Proceedings.

#### a. The Administrative Record Before the ALJ.

Dr. Cox practices with The Doctor's Office. AR 691. The administrative record considered by the ALJ contains treating records from The Doctor's Office at AR 250-55, 282-322, 325-403, 561-64, and 576-653. In addition to the chiropractic records discussed above, the administrative record also contains treating records from an endocrinologist (AR 256-63), an orthopedic surgeon (AR 264-69), a radiologist (AR 281, 323), a cardiologist (AR 540-60, 565), vision specialists (AR 566-75), and a sleep lab (AR 679-89). Two state agency doctors, Drs. Garcia and Weeks, also offered opinions based on Plaintiff's medical records. AR 104-111 (Dr. Garcia's opinion dated August 9, 2013), 113-20 (Dr. Weeks's opinion dated January 2, 2014).

The ALJ also invited an ME, Dr. Julia Kogan, to testify at the hearing. AR 55. The ME reviewed Plaintiff's medical records and testified concerning the diagnoses found there. AR 60. The ME testified that Plaintiff does not have any functional limitations from her medical conditions. AR 63. The ME also testified that it would be "very difficult" for her to offer an opinion concerning how many hours Plaintiff could stand, out of an eight-hour workday, without having ever examined Plaintiff; the ME could only opine on the medical records, which did not

_____

treating notes, the regulations require ALJs to contact the source to try to obtain an explanation of the inconsistency. The regulations impose no such obligation. See, e.g., Downing v. Barnhart, 167 F. App'x 652, 653 (9th Cir. 2006) ("[A]n ALJ may reject all or part of an examining physician's report if it contains inconsistencies, is conclusory, or is inadequately supported.").

reflect "objectively any limitation." AR 66-67.

At the hearing, the ALJ asked Plaintiff's counsel if she anticipated submitting any more evidence, and counsel responded, "no." AR 53.

### b. New Evidence.

After the ALJ's unfavorable August 2015 decision, Plaintiff presented new evidence to the Appeals Council from her treating physician, Dr. Chad Cox, consisting of a two-page letter dated March 18, 2016. AR 690-91. The letter summarized when some of Plaintiff's pain complaints were first documented and the efforts undertaken to diagnose and treat her conditions from 2011-2016. Id. The letter repeated some of Plaintiff's subjective complaints and described findings from a "recent" examination by Dr. Cox. AR 690. He found her "hands have diminished coordination and are objectively weak. She has a positive Tinels and Phalens sign." AR 690. Tinel's sign is a way to detect irritated nerves associated with carpal tunnel syndrome by "tapping at the volar surface of the wrist over the site of the median nerve in the carpal tunnel." Robert S. Porter, M.D., et al., eds., The Merck Manual of Diagnosis and Therapy 391 (Merck Research Labs., 19th ed. 2011) ("Merck"). Phalen's test is also a test for carpal tunnel syndrome, which involves reproduction of tingling with wrist flexion. Id.

Dr. Cox concluded, "I now suspect she may have three concomitant diagnoses that are contributing to her increasing hand symptoms: cervical radiculopathy, carpal tunnel syndrome, and possible thoracic outlet syndrome."[8] AR 690-91. He had "begun testing for these issues." AR 691. Although he had not completed this testing, he opined that Plaintiff is "completely unable to use her hands in a sustained manner for more than 30 minutes including using a phone,

---

[8] Thoracic outlet compression syndromes are a group of "poorly defined disorders characterized by pain and paresthesias in a hand, the neck, a shoulder, or an arm. . . . Diagnostic techniques have not been established. Treatment includes physical therapy, analgesics, and, in severe cases, surgery." Merck at 1803.

typing, driving, mouse use, or any fine motor movements of the hands." Id.

Dr. Cox also opined that Plaintiff is suffering from "significant depression and anxiety." Id. As symptoms, Dr. Cox opined that Plaintiff has "poor" concentration and memory, apathy, and social withdrawal. Id. He opined that her depression and anxiety "contribute to her ability to function in a work environment." Id.

The Appeals Council made Dr. Cox's letter an exhibit and also considered an earlier letter brief from Plaintiff's counsel. AR 5, citing AR 247-48, 690-91. After considering this new evidence, the Appeals Council denied Plaintiff's request for review. AR 1.

### 3. Summary of the Parties' Arguments.

Plaintiff argues that once Dr. Cox's new opinion letter became part of the record, it was necessarily controlling, because the only other opinions about Plaintiff's functional abilities came from (1) her chiropractors, whose opinions were discredited for the reasons discussed above, (2) the non-examining state agency consultants, Drs. Garcia and Weeks, and (3) the non-examining ME, Dr. Kogan, who testified at the hearing. Plaintiff reasons, "the opinion of a non-examining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of an examining or treating physician." (JS at 19, citing Lester v. Chater, 81 F.3d 821 (9th Cir. 1995).) Plaintiff argues that the case must be remanded "for the ALJ to consider the treating opinion of Dr. Cox …." (JS at 19-20.)

The Commissioner argues that even if this Court considers Dr. Cox's letter, the ALJ's determination of Plaintiff's RFC and consequent finding of non-disability are still supported by substantial evidence, i.e., her treating records and objective test results. (JS at 16-17.) The Commissioner argues that Dr. Cox's opinion about Plaintiff's inability to use her hands for more than thirty minutes is not entitled to any weight, because it is speculative and inconsistent with his own treatment notes

and other physical examinations of Plaintiff in the record.  (JS at 17-18.)  The Commissioner argues that Dr. Cox's opinion that Plaintiff suffers from "significant depression and anxiety" should be discounted for the same reasons.  (JS at 18.)

### 4. Analysis.

#### a. Depression and Anxiety.

The question before this Court is whether the ALJ's determination not to include any terms in Plaintiff's RFC to accommodate functional limitations caused by depression or anxiety is still supported by substantial evidence.[9]

The evidence prior to Dr. Cox's March 18, 2016 letter does not reveal that Plaintiff suffers from any functional limitations due to mental illness.  In her application for disability benefits, Plaintiff did not claim to suffer from any mental impairments.  AR 104.  In her Exertion Questionnaire, Plaintiff indicated that her pain medications "make [her] very sleepy and make concentration on work difficult."  AR 213.  She did not, however, mention depression or anxiety.  Id.  She indicated that she could do mentally-involved tasks such as driving, reading, and using email.  AR 211, 213.  At the hearing, she testified that she is "on pain meds every day" and has "a hard time concentrating," but she did not mention depression or anxiety.  AR 102.

The administrative record contains the following evidence discussing Plaintiff's mental health, in chronological order:

• 05/14/10 "New Patient Office Visit" for The Doctor's Office: Under ROS [review of symptoms], for "neuro/psyche," the record noted, "none."  AR 318; see also AR 316 (same 07/09/10), 314 (same 11/11/11).

• 07/20/12 appointment with endocrinologist: as part of taking a medical

---

[9] It is unclear whether Plaintiff argues that her RFC should include functional limitations related to depression and anxiety.  The Court will address this issue, because Plaintiff relies on Dr. Cox's letter which raises it.  See AR 24.

history, concerning Plaintiff's "mental status," Dr. Drange marked, "affect normal." AR 262.

• 10/27/12 visit to The Doctor's Office: under ROS for "neuro/psyche," the record noted, "none." AR 311; <u>see also</u> AR 307 (same 02/07/13), 300-01 (same 07/03/13), 294 (same 07/19/13).

• 01/21/13: Plaintiff's endocrinologist noted, "Involved in lawsuit with employer; very stressed." AR 256.

• 09/13/13 visit to The Doctor's Office: "Anxiety state, unspecified" was listed as a diagnosis "made or addressed" during the appointment, noting, "Discussed the use of SSRIs [selective serotonin reuptake inhibitors] and she will call if she wants to start medication." AR 294. Under "Additional Treatment or Instructions," Dr. de la Flor listed a prescription for Lexapro, an SSRI medication, specifying one tablet every morning for three months. <u>Id.</u> In this same appointment, however, Dr. de la Flor identified Plaintiff as having "no" neuro/psyche symptoms. AR 293.

• 10/04/13 and 11/22/13 visits to The Doctor's Office: Plaintiff's list of medications included Lexapro. AR 286, 289. The Doctor's Office appears to have changed its standard template for office visit notes, and the new form does not ask for an assessment of neuro/psyche symptoms.

• 07/09/14 visit to The Doctor's Office: Plaintiff's diagnosis of "anxiety state, unspecified" was again addressed. AR 331. She complained of "extreme stress with loss of father-in-law and significant family issues." AR 330. She was prescribed Xanax, a benzodiazepine sedative, to take "PRN" [as needed] for anxiety. AR 332. Her medication list still included Lexapro. <u>Id.</u>

• 07/27/14 visit to The Doctor's Office: While Plaintiff still had prescriptions for Xanax and Lexapro, Dr. Jenkins noted "normal mood and affect." AR 341 (copy at AR 591).

• 08/05/14: Plaintiff reported anxiety and depression to her cardiologist. AR

17

557.

• 12/09/14 visit to The Doctor's Office: Plaintiff's medication list no longer included Lexapro, but included Alprazolam, a generic name for Xanax.  AR 368-69.  This record also noted, "stable on current medicine regimen."  Id.

• 03/26/15 visit to The Doctor's Office: "Depression" was a diagnosis made or addressed at this appointment.  AR 387.  Plaintiff was still receiving Alprazolam, and the treatment notes said, "well controlled … refilled meds … doing well."  AR 388, 638.

• 04/19/15 visit to The Doctor's Office: "Anxiety disorder, generalized" was a diagnosis made or addressed at this appointment.  AR 391.  The treatment notes say, "refilled Xanax."  AR 392.

• 07/10/15 administrative hearing: Plaintiff did not testify that she suffers from depression or anxiety.  She testified that she is "on pain meds every day," causing her to have "a hard time concentrating …."  AR 102.

As summarized above, the only evidence of any treatment for anxiety or depression are records reflecting prescriptions for Lexapro and Xanax.  These prescriptions were provided to Plaintiff to take "as needed" in response to her complaints, but none of her doctors observed any psychiatric symptoms, let alone resulting functional limitations.  See AR 293-94 (Plaintiff prescribed Lexapro "if she wants to start medication" but had "no" neuro/psyche symptoms), 332, 341 (Plaintiff prescribed Xanax to take "as needed" after a family loss but was described later the same month as having "normal mood and affect"), 369, 388 (Plaintiff described as "well controlled," "stable," and "doing well"; no mental health counselling or therapy included in treatment plan).  There is no evidence in Plaintiff's medical records that she was ever referred to a mental health specialist or obtained treatment from a mental health specialist.  Plaintiff does not cite to any discussion in her medical records that she suffered from functional limitations caused by depression or anxiety, such as difficulty interacting appropriately with

medical staff, complying with her medication regimen, managing her benefits, or keeping her medical appointments. Thus, to the extent Dr. Cox opined that Plaintiff's mental impairments would more than minimally affect Plaintiff's ability to do work-related tasks, his opinion is inconsistent with her treating records.[10]

Dr. Cox opined that Plaintiff has been treated for depression and anxiety "since 2013 and only seems to have a moderate reduction in her symptoms …." AR 691. This is consistent with the first mention of anxiety in Plaintiff's medical records occurring in September 2013. AR 294. This is inconsistent, however, with subsequent treatment records that do not describe Plaintiff as suffering from significant mental health symptoms—records that show that what symptoms she did have were controlled by treatment. Again, Plaintiff's treating records after September 2013 often describe her as symptom-free, stable, and doing well. See AR 341, 369, 388.

Dr. Cox also opined that Plaintiff suffers from "poor concentration" and "poor memory" as symptoms of her anxiety and depression, not as side effects of pain medication. AR 691. He did not explain the basis for this opinion. Nothing in his treating notes discusses these symptoms. There is no evidence that he ever administered any concentration or memory tests.

Dr. Cox's opinion stands in contrast with Plaintiff's hearing testimony and reported activities. Plaintiff testified about her medications and her medical history back to the 1990s. AR 69-76. She remembered the names of doctors and dates of surgeries. AR 76-77. Plaintiff also testified, "I'm a real girl scout when it comes to

---

[10] Dr. Cox's March 18, 2016 letter does not expressly state that Plaintiff's depression and anxiety cause functional limitations that would more than minimally affect her ability to work. Dr. Cox vaguely opines, "Certainly the depression and anxiety contribute to her ability to function in a work environment." AR 691. He does not explain how or to what degree. He also does not suggest any accommodations (e.g., flexible hours, limited public contact) that would reduce Plaintiff's supposed mental health-related functional difficulties.

19

following [medical] orders," suggesting that Plaintiff can manage her extensive medication regimen and appointment schedule. AR 72. Her activities include tasks that require concentration, such as driving, reading, and using a computer. AR 211-13. At no point during the hearing did she tell the ALJ that she suffers from depression or anxiety, let alone depression or anxiety so significant that it more than minimally affects her ability to work. AR 84-85 (describing her prior work as "extremely stressful" yet she was "extremely successful at it" and stopped only when she was no longer "physically capable" of doing it), 102 (attributing difficulty concentrating to her pain medication).

Dr. Cox also opined that Plaintiff suffers from "social withdrawal" as a symptom of anxiety and depression. AR 691. Again, he failed to identify the basis for this opinion. None of his treating records discuss this. There is no evidence that Plaintiff ever reported to Dr. Cox – or any other treating source – that she experienced disabling anxiety when interacting with others. To the contrary, there is evidence that she often leaves her house for weekly medical appointments, pool therapy, and errands. AR 73, 90. While pain limited her activities, including socializing, there is no evidence that mental impairments affected her relationships. AR 210-11 (in 2013, could grocery shop once or twice a week using a cart for support).

For all these reasons, even after considering Dr. Cox's new opinion letter, substantial evidence supports the ALJ's decision not to include in Plaintiff's RFC any restrictions to accommodate mental impairments.

b. Hand Numbness.

Dr. Cox opined that Plaintiff "will be completely unable to use her hands in a sustained manner for more than 30 minutes …." AR 691. As an initial matter, this opinion is so vague that it cannot undermine the ALJ's RFC finding. Dr. Cox did not specify whether he meant that Plaintiff cannot use her hands in a sustained manner for more than 30 minutes during an eight-hour workday or for more than 30

minutes without a break (and if so, a break of what duration).  As discussed above,
Plaintiff's past relevant work includes tasks that do not require fine motor
movements of the hands (e.g., reading records, talking on the phone, walking to
retrieve files), and these tasks can be intermingled with computer usage such that
Plaintiff is not required to type for longer than 30 minutes at one time.

Even assuming Dr. Cox meant that Plaintiff cannot use her hands in a
sustained manner for more than 30 minutes in an eight-hour workday, Dr. Cox
failed to support this opinion adequately.  Dr. Cox "suspects" she may have carpal
tunnel syndrome based on her reported symptoms and his recent examination, but
he had only "begun testing for these issues," and there is no discussion of carpal
tunnel syndrome in her earlier treating records.  AR 690-91.  Plaintiff applied for
disability benefits alleging pain in her arms and hands in 2011 (AR 197), but
between 2011 and 2016, despite seeing Plaintiff frequently, Dr. Cox's office never
referred Plaintiff for any kind of objective testing to diagnose carpal tunnel
syndrome.  See Hayes v. Astrue, 270 F. App'x 502, 504 (9th Cir. 2008) (discussing
"nerve conduction study" to diagnose carpal tunnel syndrome).  There is no
evidence that any doctor ever suggested Plaintiff use a wrist brace while typing or
sleeping, or that she ever did so.  Similarly, Dr. Cox "suspects" Plaintiff may have
"possible thoracic outlet syndrome," but he is speculating rather than diagnosing
her with that condition based on clinical evidence.  AR 691; see Kager v. Astrue,
256 F. App'x 919, 923 (9th Cir. 2007) (discussing various objective tests for
thoracic outlet syndrome).  The administrative record contains no treating records
from a neurologist.[11]

Plaintiff's records from acceptable medical sources say very little about

---

[11] Plaintiff may have seen a neurologist but not included those records in the
administrative record.  AR 365 dated 11/12/14 states, "seen by neurologist;" AR
545 dated 11/19/14 states, "FU [follow up] after neuro evaluation."

possible hand impairments.  In 2012, Plaintiff saw an endocrinologist to help treat her diabetes and discussed "neuropathy" as a symptom of her diabetes.  AR 260. The ALJ determined that Plaintiff's diabetes was a non-severe impairment, and Plaintiff did not challenge that determination on appeal.  AR 40.

In May 2010 and February 2013, Plaintiff consulted with orthopedic surgeon, Dr. Kaufman.  His examination focused on her lower extremities with no mention of pain affecting her wrists, hands, or fingers.  AR 265, 267.

In mid-2012 and early 2013, Plaintiff told chiropractor Dr. Kantor that she used a computer.  AR 271, 275.  In September 2013, Plaintiff complained about not being able to bend her right first and second fingers and possible fungus in her fingernails.  AR 292.  She complained of finger pain and neck pain.  Id.  During that same appointment, The Doctor's Office noted, "Needs to see ortho but will not go."  AR 294.

In a physical examination about nine months later in July 2014, Dr. Jenkins reported that Plaintiff's neck was "normal," her musculoskeletal examination was "normal," her joints were "all normal," she had "normal" extremities, and her "cranial nerves" were "intact."  AR 341 (repeated at AR 591).  Also in July and August 2014, a cardiologist conducted a physical exam and noted as to Plaintiff's upper extremities: "inspection of digits and nails; normal …" and "normal strength in all four extremities" with "full range of motion."  AR 553-54, 557.

In October 2014, Dr. Cox reported as Plaintiff's "chief complaint" that she had pain in her "lower back neck and arms legs."  AR 362 (repeated at AR 612). This record discusses Plaintiff's hypertension, diabetes, hyperthyroidism, and recent sleep study, but it does not say anything about Plaintiff's hands.

The administrative record also includes the opinions of non-examining agency physicians, Drs. Garcia (08/09/13 initial review) and Weeks (01/02/14 reconsideration).  AR 105-11, 113-20.  After reviewing Plaintiff's treating records, they both opined that Plaintiff has no manipulative limitations.  AR 109, 118.  See

Thomas, 278 F.3d at 957 ("[O]pinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.")

In view of all this evidence, even after considering Dr. Cox's speculative new letter, the ALJ's decision not to include in Plaintiff's RFC any restrictions against using her hands in a sustained fashion for more than thirty minutes during an eight-hour workday is supported by substantial evidence.

**C. Issue Two: Plaintiff's Subjective Symptom Testimony.**

**1. The Evaluation of Subjective Symptom Testimony.**

An ALJ's assessment of a claimant's testimony concerning his or her pain level is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" Molina, 674 F.3d at 1112 (citation omitted).

If the ALJ finds testimony as to the severity of a claimant's pain and impairments is unreliable, "the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas, 278 F.3d at 958 If the ALJ's credibility finding is supported by substantial evidence in the record, courts may not engage in second-guessing. Id.

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036. If so, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282

(9th Cir. 1996).

Second, if the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion. Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 & n.9 (9th Cir. 2014).

Here, the ALJ issued his decision in August 2015. At that time, Social Security Ruling ("SSR") 96-7p had not been superseded by SSR 16-3p (which superseded SSR 96-7p on March 28, 2016). The Court notes that the SSR changes appear immaterial to the ALJ's analysis in this case. Both SSRs note that, in assessing a claimant's subjective symptom testimony, ALJs should consider, in addition to the objective medical evidence: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Compare SSR 96-7p, 1996 WL 374186, and SSR 16-3p, 2017 WL 5180304; see also 20 CFR § 404.1529 (effective to March 26, 2017, reflecting same factors); see also Clowser v. Berryhill, No. 16-2044, 2017 WL 5905506, at *3 (C.D. Cal. Nov. 30, 2017) ("When, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision.").

24

## 2. The ALJ's Evaluation of Plaintiff's Testimony.

The ALJ summarized Plaintiff's testimony concerning the limiting effects of her pain. AR 42-43. Plaintiff claims that she is unable to sit, stand, or walk for prolonged periods, such that she cannot perform even sedentary work. AR 43, citing AR 213 (exertion questionnaire stating, "I am unable to sit for more than 20-30 minutes or stand for more than 5-10 minutes. I must alternate sitting, standing, lying down throughout the day.").

The ALJ found that Plaintiff's degenerative disc disease could reasonably be expected to cause some pain, but that Plaintiff's statements concerning the "intensity, persistence, and limiting effects of these symptoms are only partially credible, for the reasons explained in this decision." AR 43. The ALJ then enumerated several reasons including: (1) lack of supporting medical evidence, (2) inconsistency with the medical evidence, (3) inconsistency with daily activities, and (4) "routine and/or conservative" treatment. AR 45. The Court discusses each reason below.

### a. <u>Reason One</u>: Lack of Supporting Medical Evidence.

The ALJ stated, "the record does not contain any opinion from acceptable medical sources indicating that the claimant is currently disabled." AR 45. The ALJ explained why the objective evidence failed to support Plaintiff's allegations of disabling pain, as follows:

> Despite allegations at the hearing of "herniated discs" and nerve impingements, radiographic imaging of the cervical spine showed generally unremarkable findings except for mildly decreased lordosis, moderate apparent cervical myospasm, moderate scoliosis, partial fusion of C2-C3, and multi-level narrowed disc space. Similarly, radiological imaging of the lumbar spine showed generally unremarkable findings expect for small disc bulges, multi-level narrowed disc spaces, multi-level spondylosis, neuroforaminal

encroachments at L5-S1, mildly decreased lordosis, pelvic unleveling, apparent lumbar myospasm, and mild scoliosis.

AR 43. In support, the ALJ cited large swaths of medical evidence which include the following records discussing Plaintiff's x-rays and MRIs (in chronological order):

• AR 495-96 (11/10/06 MRI of lumbar spine reporting disc desiccation and 1-2 mm disc bulges, but "the spinal canal and neural foramina are adequate");

• AR 483 (05/19/08 MRI of lumbar spine described as "limited study" because "patient was extremely claustrophobic and could not continue the images … despite at least three phone calls the patient has not been responding;" showed "no significant interval changes" from 11/10/06 MRI and "grossly … the spinal canal and neural foramina remain adequate");

• AR 268-69, 476 (Dr. Kaufman described MRI from 11/10/06 as showing "small disc bulges of 2 mm" and MRI from May 2008 as showing "no significant changes;" his impression was "mild lumbar degenerative disc disease");

• AR 283 (09/01/11 x-ray of cervical spine showing "loss of the lordosis" and "partial fusion of C2-3 and narrowing of C5-6 and C6-7 disc space," leading to conclusion of "degenerative disc disease");

• AR 281 and 323 (08/01/13 radiology report for the lumbar spine finding "mild to moderate disc space narrowing at L4-5 and L5-S1" and "Dextroscoliosis and hyperlordosis. Spondylosis with moderate disc degeneration and facet joint arthritis at L4-5 and L5-S1. No loss of height of vertebral bodies.");

• AR 675-77 (chiropractor Dr. Griffin interpreted cervical and lumbar spinal x-rays taken by his office on 02/20/14);

• AR 390, 640 (on 04/19/15, Dr. Cox noted, "patient delaying test" referring to MRI of lumbar spine and neck);[12] and

_____

[12] In his 2016 letter, Dr. Cox explained that Plaintiff was unwilling to

• AR 690 (Dr. Cox referred to an MRI done on 03/01/16 after the ALJ's decision that "confirmed what was seen on x-rays in 2011").

This objective evidence demonstrates that Plaintiff suffers from degenerative disc disease, but the ALJ rationally determined that these relatively mild objective findings do not support Plaintiff's testimony that her back pain is so severe that even when taking narcotic pain medication, she must spend a significant part of each day lying down to manage her pain.

"Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." Burch, 400 F.3d at 681. The Court, therefore, considers the validity of the ALJ's other reasons.

              b. Reason Two: Inconsistency with the Medical Evidence.

The ALJ identified several alleged inconsistencies between Plaintiff's testimony and the medical evidence. First, the ALJ noted, "the claimant testified that she could not sit for more than ten minutes at a time, but this is contradicted by Dr. Griffin's opinion that she could sit for one hour." AR 45. At the hearing, Plaintiff testified, "If I sit for more than – I mean I'm having problems now and I've been here for half an hour. I have problems sitting for more than about 10 minutes." AR 74; see also AR 231 (reporting Plaintiff "unable to sit for more than 20-30 minutes"). Dr. Griffin wrote, "Pt. is unable to sit for longer than 1 hour." AR 676; see also AR 675 ("pt unable to sit > 1 hr.").

Technically, if a person cannot sit for more than 10 minutes, that same person also would be unable to sit for longer than one hour. The more reasonable interpretation of Dr. Griffin's note, however, is that Plaintiff can sit for time periods up to but not longer than one hour. But this was not inconsistent with Plaintiff's testimony. Plaintiff did not say that she could not sit for more than 10 minutes—

_____

perform this test due to claustrophobia. AR 690.

only that it was difficult for her.  AR 74.  Indeed, Plaintiff points out in the JS that she sat for an hour during the hearing.  See JS at 8; but see AR 213 (April 2013 Exertion Questionnaire stating, "I am unable to sit for more than 20-30 minutes.").

Second, the ALJ noted, "The claimant also testified that she drops items due to numbness in the hands, but there is no support for these allegations in any treatment notes."  AR 45, citing Plaintiff's testimony at AR 68-69 ("I have numbness in my hands and arms, especially in my right hand.  Lack of use of my hand.  I have trouble grasping.  I drop things.  I've cut myself numerous times.").  Above, the Court summarized the evidence from Plaintiff's treating sources addressing Plaintiff's hands.  At the time, the ALJ correctly found that no records from treating medical sources discussed Plaintiff's claim that she regularly drops things.  Dr. Cox's new letter, however, states that Plaintiff "describes increasing clumsiness.  Her hands will suddenly give out and she will drop an item."  AR 690.  He conducted an examination and found her "hands have diminished coordination and are objectively weak.  She has a positive Tinels and Phalens sign."  Id.

Plaintiff argues that Dr. Cox's letter nullifies the ALJ's finding.  (JS at 25.)  Regardless, the ALJ's finding concerns the lack of supporting medical evidence – not a purported contradiction between Plaintiff's testimony and the medical evidence.  As such, at best it supports Reason (1), not Reason (2).

Third, the ALJ asserted that Plaintiff's testimony that she cannot sit for prolonged periods and has edema that requires her to elevate her legs was "rebutted" by physical examinations that "generally indicated benign findings."  AR 45.  As examples of benign examinations, the ALJ cited "examinations showing full range of motion in all four extremities, intact deep tendon reflexes, normal gait, and negative strait leg raises."  AR 43, citing AR 265, 268 (negative strait leg raises), 341 (deep tendon reflexes intact), 314, 557 (full range of motion in extremities), 553-54 (normal gait and extremity strength).  The ALJ also acknowledged that "on a few occasions … slight spasm in the lumbar paraspinous

28

muscles and limping gait were noted." Id., citing AR 667 (Dr. Griffin noted limping gait), 283 (x-ray showing "loss of the lordosis, suggestive of paraspinal muscle spasms"), 264 (Dr. Kaufman noted "slight spasm in the lumbar paraspinous muscles").

The Court finds this third asserted inconsistency less than persuasive. Regarding edema, Plaintiff testified, "What my doctors recommend is lying down and elevating my legs. I have severe edema in my legs as well. Lower – like below my knees." AR 75. The ALJ credited Plaintiff's testimony to some degree, incorporating in the RFC a restriction against working in extreme temperatures because of "lower extremity edema which may become exacerbated in these extreme conditions." AR 44. The ALJ did not, however, incorporate a requirement for leg elevation.

Plaintiff's medical records reflect occasional edema of her lower legs and feet. See AR 262, 298, 301 ("trace bilateral ankle edema"), 300 ("feet are swollen"), 540 ("minimal leg edema"), 543 ("pedal edema"), 550 ("mild edema" in legs); 660-61 (bilateral ankle swelling) AR 675 (Dr. Griffin opined, "constant swelling in legs"); compare AR 256, 258-59 ("ext[remities] Ø edema"), AR 341 (physical exam with no mention of edema); AR 557 ("extremities are normal … no pedal edema"). Dr. Kantor recommended that Plaintiff elevate her legs (even though the ALJ did not credit this opinion). AR 482, 494. Plaintiff claims that Dr. Griffin, Dr. De la Flor, and Dr. Cox all agreed that she should elevate her legs, and the ALJ did not cite to anywhere in the record where these doctors noted that she should not elevate her legs. AR 75. Thus, Plaintiff's testimony that she suffers from edema and received doctors' recommendations to elevate her legs when her edema flared up is not inconsistent with the medical evidence. The records do not necessarily reflect "severe" edema, but Plaintiff's use of this vague adjective is not enough to make her testimony inconsistent with the medical evidence.

Regarding sitting, the ALJ contrasted Plaintiff's testimony with physical

examinations that revealed only mild or normal physical findings.  Again, the ALJ failed to identify a contradiction between Plaintiff's testimony and the medical evidence; the ALJ was merely giving another example of how the objective medical evidence does not support the severity of Plaintiff's claimed pain symptoms.  This supports Reason (1), but not Reason (2).

As a fourth potential inconsistency, the ALJ noted, "The claimant testified that she had 'all tests' performed, which purportedly showed back and neck nerve impingement; but, as noted above [referring to x-rays and MRIs], there is no evidence of nerve impingement from available radiographic imaging in the record."  AR 43.  At the hearing, Plaintiff testified:

> [T]hey tested me for MS.  They tested me for rheumatoid.  Everything in the book.  And it came back to it's your back.  It's your neck.  You know, you have herniated discs.  It's impinging on nerves.  That's why you have these problems.  They prescribed pain medication for me at that point.  That was November of 2006.  And I've been on the pain meds ever since.

AR 80.  In this testimony, Plaintiff relayed what she was told in November 2006 concerning the results of medical tests; she claimed that she was told that she had herniated discs and nerve impingement.  Id.  Yet the 2006 and 2008 MRIs both reflected "adequate" "neural foramina" (i.e., no compression of the spinal nerve).  AR 495-96, 483.  The 2006 MRI report stated, "no significant disk . . . herniation" for T12-L1 through L3-L4.  AR 495.  Yet Dr. Kantor wrote in December 2009 that she had "lumbar disk herniations," as "demonstrated by her 2006 and 2008 lumbar MRI's."  AR 482.  It is possible, therefore, that Plaintiff's doctors informed her that she may have nerve impingement and herniated discs, despite her MRI results.

In sum, the ALJ did not identify clear and convincing contradictions between Plaintiff's testimony and the medical evidence.

1          c. <u>Reason Three</u>:  Inconsistency with Daily Activities.

2          ALJs may consider contradictions between a claimant's reported limitations

3    and a claimant's daily activities when assessing subjective symptom testimony.

4    <u>Morgan v. Apfel</u>, 169 F.3d 595, 599-600 (9th Cir. 1999) (claimant's "ability to fix

5    meals, do laundry, work in the yard, and occasionally care for his friend's child"

6    were inconsistent with disabling mental impairment); <u>Tidwell v. Apfel</u>, 161 F.3d

7    599, 602 (9th Cir. 1998) (daily activities inconsistent with total disability

8    undermined subjective testimony of disabling pain); <u>Orteza v. Shalala</u>, 50 F.3d 748,

9    750 (9th Cir. 1995) (claimant's ability to perform "various household chores such

10   as cooking, doing the dishes, going to the store, visiting relatives, and driving"

11   inconsistent with claimed inability to do light work).

12         The mere fact that a claimant can carry on some daily activities, however,

13   does not defeat a claim of disability.  <u>Verigan v. Halter</u>, 260 F.3d 1044, 1050 (9th

14   Cir. 2001) (claimant's ability to "go grocery shopping with assistance, walk

15   approximately an hour in the malls, get together with her friends, play cards, swim,

16   watch television, and read" was not inconsistent with pain testimony where "these

17   physical activities did not consume a substantial part of [her] day").  Moreover, a

18   claimant may engage in activities like walking and swimming "*despite* pain for

19   therapeutic reasons, but that does not mean she could concentrate on work despite

20   the pain or could engage in similar activity for a longer period given the pain

21   involved."  <u>Id.</u>  Thus, the relevant issue becomes whether the claimant's activities

22   (1) contradict the Plaintiff's testimony, or (2) "meet the threshold for transferable

23   works skills."  <u>Orn v. Astrue</u>, 495 F.3d 625, 639 (2007); <u>Derr v. Colvin</u>, 2014 WL

24   5080437, at *12 (D. Ariz. Oct. 9, 2014) ("Only when a level of activity is

25   inconsistent with a claimant's claims of limitations should those activities have any

26   bearing on the claimant's credibility.").

27         Here, the ALJ found as follows:

28              The claimant has described daily activities that are not limited to

31

the extent one would expect given the complaints of disability symptoms and limitations.  In particular, the claimant reported that she could walk approximately 150 feet to the store; lift light grocery bags, a gym bag, and a small laundry basket; swim for therapy two times per week up until recently when she had to stop because swimming was exacerbating neck pain; perform light household chores like washing the dishes, dusting and laundry; and drive a car up to 15 minutes.  The fact that the claimant is able to perform these activities suggests that her allegations of disabling pain are questionable.

AR 45, citing AR 210-13 (exertion questionnaire).

The ALJ's finding of inconsistency is not supported by substantial evidence.  None of these activities would require sitting for more than 30 minutes or standing for more than 10 minutes.  Plaintiff could do all these activities and still spend most of her waking hours lying down.

d.  Reason Four:  Routine and/or Conservative Treatment.

A condition with symptoms that can be adequately controlled with medication and conservative treatment cannot be the basis of a claim for disability benefits.  Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  An ALJ may discount a claimant's testimony regarding the severity of an impairment where the claimant has received conservative treatment.  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (ALJ properly discredited testimony of disabling pain that was "treated with an over-the-counter pain medication").  This is particularly true where a treating physician recommended a more aggressive treatment, and the claimant rejected it.  Molina, 674 F.3d at 1113 ("We have long held that, in assessing a claimant's credibility, the ALJ may proper rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.").

In this case, the ALJ found:

> [A]lthough the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature. She has been taking medication and they have helped with symptoms with very little side effects. When considering the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms, it would not prevent claimant from engaging in the above RFC.

AR 45, citing AR 245 (medication list) and AR 576-653 (records from The Doctor's Office).

Plaintiff argues that the use of narcotic pain medication is not conservative. (JS at 2, citing <u>Lapierre-Gutt v. Astrue</u>, 382 Fed. App'x 662 (9th Cir.2010).) In <u>Lapierre-Gutt</u>, the Ninth Circuit held that a claimant's management of her back pain was not conservative where it consisted of narcotic pain medication, occipital nerve blocks, trigger point injections, and cervical fusion surgery, and there was no evidence that more aggressive treatment options were available. <u>Id.</u> at 664.

Here, in contrast, Plaintiff has not received nerve blocks, injections, or spinal surgery. Rather, the evidence shows that Plaintiff has been taking pain medication to treat the symptoms of degenerative disc disease since 2006, and she remained employed until 2011. AR 68, 77, 80. Her medical records do not discuss adjustments to her pain medications over the years. <u>Compare</u> AR 322 (in May 2010, Plaintiff taking Norco and Soma for degenerative disc disease) <u>and</u> AR 358, 361 (in August 2014, Plaintiff taking Norco, Soma and Percocet), 365 (in December 2014, Plaintiff taking Oxycodone 10 mg capsules as needed), 638 (in March 2015, same Oxycodone prescription), 72 (she has been taking Xanax and Oxycodone "for quite a while"). Her medical records contain numerous comments indicating that her symptoms are stable and she is doing well, without differentiating between Plaintiff's various conditions. <u>See, e.g.</u>, AR 578 ("stable on

33

meds … doing fine today"), 364, 614 ("doing better on current med regime"), 619 ("stable on current medicine regime, meds refilled no changes made"), 638 ("well controlled, no change in management, refilled meds, doing well"). She does not take "any pain meds" if she must drive somewhere. AR 71.

In May 2010 and February 2013, Dr. Kaufman referred Plaintiff to a pain management specialist, Dr. Kim, but she did not go. AR 264-65, 269. He advised that pain management and pool therapy were the best treatment options, and he did not mention any surgical options. Id. In September 2013, Dr. Jenkins wrote concerning Plaintiff's back pain, "needs to see ortho but will not go." AR 294. Plaintiff received regular chiropractic adjustments and attended pool therapy. AR 73. Plaintiff tried hypnosis prior to her 2006 cancer surgery, but she has not done it since because "everything takes money." AR 80. She would also like to try acupuncture. AR 81.

The ALJ did not err in characterizing this treatment history as more conservative than one would expect for a person who claims to be suffering from pain so severe that she must spend much of her time lying down and cannot use her hands in a sustained fashion for more than 30 minutes. The fact that her treatment included narcotic pain medication does not erase this inconsistency, particularly where Plaintiff declined a referral to specialized pain management. See, e.g., Ferguson v. Berryhill, No. 16-02186, 2017 U.S. Dist. LEXIS 105493, at *11 (C.D. Cal. July 7, 2017) (upholding ALJ's rejecting of Plaintiff's testimony where plaintiff received conservative, effective treatment, which included narcotic medication); Wallace v. Berryhill, No. 16-02064, 2017 U.S. Dist. LEXIS 141354, at *15 (C.D. Cal. Aug. 31, 2017) (upholding ALJ's rejection of physician's opinion as inconsistent with "conservative" treatment where claimant took Tramadol for years); Kelly v. Colvin, 15- 06154, 2016 U.S. Dist. Lexis 124261, at *11 (C.D. Cal. Sept. 13, 2016) (upholding ALJ's determination that treating consisting of "physical therapy and medications such as Tramadol, Naproxen, Ultram, Hydrocodone, and

34

Ibuprofen" was conservative); <u>Medel v. Colvin</u>, 13- 2052, 2014 U.S. Dist. LEXIS 159933, at *27 (C.D. Cal. Nov. 13, 2014) (affirming AL's characterization of claimant's treatment as conservative where he had been "prescribed only Vicodin and Tylenol for his allegedly debilitating low-back pain"); <u>Morris v. Colvin</u>, 13-6236, 2014 U.S. Dist. LEXIS 77782, at *12 (C.D. Cal. June 3, 2014) (finding that ALJ permissibly discounted plaintiff's credibility in part because plaintiff received conservative treatment consisting of use of TENS unit and Vicodin); <u>Jimenez v. Colvin</u>, 12- 01676, 2013 U.S. Dist. LEXIS 88614, at *14 (C.D. Cal. June 24, 2013) (upholding ALJ's determination that treating "consisting of Tramadol and over-the-counter Motrin" was conservative); <u>Walter v. Astrue</u>, 09- 1569, 2011 U.S. Dist. LEXIS 38179, at *9 (C.D. Cal. Apr. 6, 2011) (finding that ALJ permissibly discounted claimant's credibility based on conservative treatment, which included Vicodin, physical therapy, and a single injection).

Thus, Reason (4) was a clear and convincing reason to discount Plaintiff's subjective symptom testimony, particularly when considered along with Reason (1).

## V.

## CONCLUSION

For the reasons stated above, IT IS ORDERED that judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

DATED: <u>April 19, 2018</u>

<u>Karen E. Scott</u>
KAREN E. SCOTT
United States Magistrate Judge